The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting, God save the United States, in this Honorable Court. You may be seated. We want to welcome everyone to the Fourth Circuit Court of Appeals this morning, to the Tweed Courtroom, for three interesting cases, with an array of good lawyers. And in the first case, United States v. Beeman, we've got Mr. Dinkin, appointed counsel. And you've been appointed counsel in the case since the beginning, I think. Yes. Yes. So you have the floor. Come forward and say your piece. May it please the Court. My name is William Dinkin, and I represent the appellant, Brock Beeman. Mr. Beeman was convicted by a jury of sending three threatening letters in a different prosecution that was in Norfolk, a federal prosecution. Two of the letters went to the prosecutor, one went to the case agent. We have raised three issues on appeal. It was tried in Norfolk by a Richmond judge. Correct, Judge Young. The first issue is, we contend that the district court erred in admitting a fourth uncharged letter that was sent about four months after the last charged conduct. And in this letter, Mr. Beeman included multiple threats to a number of other individuals, including the presiding judge, the court personnel, the U.S. Marshals, probation officers, just to name a few. Well, you've already got three letters in. Right. They're pretty bad. They're terrible. There's no question about that. Absolutely terrible. So what's going to make that fourth one not just prejudicial, but unfairly prejudicial? Because he's added so many additional individuals to that letter. So the first three letters are directed primarily at the prosecutor in two of them and the case agent in the other. Although we would agree that he also included a separate case agent in, I think it was one of the letters. But in this last letter, Mr. Beeman has- The last letter, you mean the fourth letter? Correct. The fourth uncharged letter. Right. Mr. Beeman has now expanded the universe of who he is threatening. And it was our contention that- He said he was going to blow up the courthouse, didn't he? Right. At some point, it becomes- Like they're piling on? Hyperbolic and- You thought they were piling on. Well, it was hard to pile on. And you objected? Yes. You preserved it. And the judge overruled you and said it comes in under Res Gesta or 404B? Correct. And we objected to both of those on both grounds. So as far as Res Gesta, of course, those- to the case rather than extrinsic, which is addressed under Rule 404B. And we contend that the evidence was not intrinsic to the case. And all this is reviewed for abuse of discretion. That's correct. It's an evidentiary decision. And we said this 404B evidence kind of thing is pretty much inclusive. Right. It's a rule of inclusion. Rule of inclusion.  Is that an opinion of, really, my friend Judge Steenbuyer, I think? I've seen it so many times. But that term, I remember those words. Right. I might be the only one. I'm sure I heard it from Mr. Panth as well when we were- So what do you mean by it's not intrinsic? It has some details in it that followed up on the first three letters in terms of how that plan might be carried out, didn't it? Marginally. And that's what the judge essentially ruled. The trial judge held that it was intrinsic in the sense that it was either part of the same set of transactions is one way it can be intrinsic, or it has to be necessary to complete the story. And Judge Locke held that the fourth letter was necessary to complete the story because it showed some additional explanation of animus by Mr. Beeman towards the case agent. That, really, that additional animus was marginal at best. It explained that she had driven 700 miles to arrest him. Why not drive another 30 miles? That was the additional fact, which perhaps provides a little bit of marginal explanation. But what the court didn't address is the fact that we now have threats against the trial judge. We've got threats against the probation officer, the U.S. Marshals, just to name a few. And those are extrinsic facts. I mean, those are extrinsic. That's extrinsic to the case. And I think that the United States versus Brisuela case- You're saying that the fourth letter was just too much. It is too much. And Brisuela talks about piling on. Pile on. Piling on. Piling?  But, you know, as far as the analysis, Brisuela's interesting because it stakes out kind of two poles as to what's intrinsic. And on the one hand, they discuss the United States versus Kennedy case, which was a conspiracy case. And in Kennedy, the government sought to introduce evidence outside the charged conspiracy of the defendant distributing drugs. And there was an argument that that was extrinsic, not intrinsic. And this court ruled in Kennedy that it was necessary to complete the story because it showed who the suppliers were. And that kind of makes sense in a conspiracy where a supply has to come from somewhere else. And then in Brisuela, there's a discussion of the United States versus McBride case. And that's the other pole. And in McBride, there was a single drug transaction about a year before the charged transaction involving unrelated parts. And those two really stood alone. And this court found that that was extrinsic. It wasn't part of the same series of transactions, and it wasn't necessary to complete the story. Brisuela falls right in between and really emphasizes the fact that it is a fact-intensive decision that this court has to make. Under 404B, something can come in to prove a motive, an identity, a pattern, and all that kind of stuff. Right. And there's a big list. Yeah, there's a big list. And that's where the rule of inclusion we have in this circuit. That's right. And that's a separate analysis from the res geste. Well, it's a separate analysis. But they were arguing it was admissible under both. Right. And if it's admissible under either one, it's admissible. Right. And so taking them in turn, I just want to, if I could. I mean, even if we were to agree with you on the res geste, we might disagree with you on the 404B, and that wouldn't help you. That would leave me right where I am. But we also take the position that it's not admissible under 404B.  Back to the Vrezuela case.  That was one of the opioid sort of mill, yeah, let's probably be careful with my language about how you describe those. But one of the doctor's office that were accused of over-prescribing opioids.  And as I recall, the evidence there was about specific patients who were not charged. So there was details about separate events, separate patients. Right. I get your argument that there's some similarity here because you got a letter that wasn't charged and you got references. But at least it's somewhat different in that the evidence that you say was improperly admitted does contain information about the same threats or the threats to the same people. Right. So that, you know. So I'll address that. Yeah. Because my case, that fourth uncharged letter, we could call it a hybrid letter. Right, right. Because it does reference the case agent and it does have additional threats to the case agent. And if that letter, that fourth uncharged letter was a threat directed just to the case agent and was expanding on the story regarding the case agent, then yes, I would say that would be both part of the same series of transactions and necessary to complete the story. And what the trial court really didn't address and what I'm asking this court to take into consideration is that Mr. Beeman in that last letter expands the number of the people. Wouldn't it be more like Brazuela if you didn't have any reference to the victims that were charged and you just had threats to new people like that we don't have here? That would fall, it seems to me, more squarely in the Brazuela world. Right. I would be on all fours with Brazuela if that were the case. Yeah. So you admit. I'm on threes, not fours. You're on something. Right. But the question is, and really it also turns on a 403 analysis, because now we've got a judge, the trial judge, being threatened. We've got the court personnel. So now it really comes right into the courtroom where these jurors are going to be sitting and these threats are being made. And I think that there's a real risk of prejudice at that point. There's no question there's prejudice of this letter. As Judge Wynn said, I mean, the government wouldn't have put it in if they didn't think it was prejudicial to you. It's got to be unfairly prejudicial. Right. All good evidence is prejudicial. Right. If it's supportive of the prosecution, it's prejudicial to the defendant. He confesses, that's very prejudicial. They flooded us with prejudicial evidence. Mr. Beamon put his name on the letter. So, yeah. I mean, you didn't make it for these facts. You just got stuck with it, or you got stuck with it. You were brought into it by the court because you're an officer of the court. That's part of the work that lawyers do. That's correct. And you're to be commended for that. Well, thank you. If I could address the 404B, because you raised it and I want to at least touch on it. This court has a 4- Yeah, I thought the 404B argument was stronger than the- My instinct was, on behalf of the government, if I was the government prosecutor, I'd have been arguing 404B ahead of Briggs-Jeffstock. Right. Am I right that this fourth letter was written after the indictment was returned? No, I don't think it was. It was before the indictment. So they could have put that in the indictment itself. So when you say there was the Norfolk indictment, and it was after there was a superseding indictment in Norfolk, and then this letter came, the fourth letter. That's what I mean. He was indicted, and then the letter came. It was post-indictment. Correct. They also could have gone back and added. They could have got another superseding indictment and put it in. Well, the second- Then they wouldn't have had to face the- Right. They could have added this. They didn't. Yeah. Then we wouldn't have this 404B. Right. We wouldn't have this issue. But- They gave you an issue. They gave you an issue. Well, they couldn't really- They could have put it in, but it would have- I mean, wouldn't it intercept it? It was intercepted, so it never made it to the- Never made it to the targets. But at that point, everyone was on notice, and they were waiting for more letters. Right. So, as far as the 404B, if I could maybe quickly address that. So, under United States v. Oliver- Now, you haven't gotten to either of the other issues you've raised here. I have not. I'll be happy to talk all morning, but- I just wanted to let you know. Oh, I know. We're not interested in being here all morning. Okay. No. In this case. So, the 404B, there are four prongs. And first, the evidence. And you're right. It's a rule of inclusion as to motive, intent, lack of mistake, all the things that are listed in the rule. But there's still another four factors that need to be considered before it comes in. And first is the evidence has to be relevant to an issue, such as an element of the offense. And in this case, the threats to the- the additional threats to the judge, to the- everybody that's not charged. Those are not relevant to proving anything. Not as to the threat to the case agent or the prosecutor. Those are really- you want to talk about gratuitous and piling on. They're not relevant. It has no bearing on proving- What was the nature of your objection to this letter? Did you- maybe you indicated there were parts of it that would be admissible, if that was all in it, and there were parts not. Did you just object to the exclusion of the entire letter, or did you ask, well, can you redact those parts? I swung for the fence, Judge. I'd move to include the entire letter. Was the letter such that you could maybe white out the names of the judges and all the others that are involved in it? We could have gotten there. We didn't have oral argument on this, and we briefed it. I'm talking about the nature of your objection. I mean, could you have done this? I could have. You're right. I could have specifically asked the court to just black out those names and left the case agent in. That would have satisfied the problem that you are now complaining about. I don't think so. Our position still is that the threat- Well, I know you still, as Judge King alluded to, you still say it's prejudicial, and it is. But those first three letters, you admit it, they were horrible letters. Right. And then you've got details here that sort of lay out the plans, and there's a connectivity to it. I've been looking at Rule 404B for decades now, and I can tell you that the route you're traveling on that, from what I've seen, is an uphill battle. I recognize that. I figured you did. But nonetheless, under the four hall prongs, the other material, the other persons who were threatened, that was unfairly prejudicial. And that's really where we're going with this. I see that I've got a red light. You've got a red light. You know what that means. You haven't mentioned your other two issues. Right. They understand them, though, I think. You have saved some rebuttal time.  Do you want to use any of your rebuttal time on either of those other issues? I will. You've got the anonymous jury. Right. Yes, I'll go ahead. And you've got the error in the closing argument that the government concedes, basically, that says it was fixed. Right. And both of those are reviewed for abuse of discretion as well. I think the anonymous jury, we contend that's a de novo review. Which one? Both. The anonymous jury.  Okay. The judge's handling of the jury is reviewed de novo. Right. Okay. That's what you're saying. That's what I'm saying. They may disagree with me. In this case, here, we're talking about a case involving threats. And then the jury is told that they're going to be anonymous. And we know under the United States v. Dinkins case that there has to be a strong reason to conclude that the jury needs protection from interference or harm. And even if those exceptional circumstances are present, it still may affect the defendant's constitutional right to a presumption of  The jury is getting the message that the defendant is dangerous. I think the very fact that these are threats does create the concern that the jury is going to conclude that they need to be protected as well. And there were suggested ways that that could be handled by redacting the personal information. The judge just took off the juror's name. You've got a client who, you know, he has some serious problems. He's threatening very serious threats. Right. Death and all kinds of stuff. And that's in the first three letters that they are in. Right. But it's not totally anonymous. I mean, he let the biographical data come out and all of the other stuff. He just didn't allow the names. As far as the jury, yeah. I had the biographical information so that I could do my job. The question was whether the jurors were going to be identified by numbers because that sends a message to them that there's danger. And I think that that creates a suggestion to the jury that he's a dangerous person, even before the trial starts. You'd have to assume that jurors didn't think that wasn't the way it was always done. Well, that was the court's position is that she wouldn't tell the jurors that it was done differently. You don't know what the court is doing. Some courts might do that. They might say, okay, we're going to call everybody one, two, three, four, on up. That's right. Counsel, I'm looking. You said we, in your view, we reviewed this de novo. For? Excuse me? I'm sorry. For which one? The jury question? I thought the anonymous jury question. Yes, sir. Is there? I'm looking quickly at your brief and I don't see anything that says that. I'm not talking waiver or anything. Right. I mean, is there a case that you would point me to? No, I didn't find a case specifically on the standard of review for that. Why doesn't Dinkins, which you were talking about, it looks to me like Dinkins suggests that there says it's abusive discretion. It is. You're right. I'm looking and I correct myself. I'm looking at my own brief. It is a deferential abusive discretion standard. I apologize. No, no worries. I just had to put my glasses on. I've got 20 seconds left. No, you don't have 20 seconds left. You're over time. I'm over time. I might give you a couple of minutes of rebuttal time later, but you're on our time, I guess. But then I'll stop. But we got that standard of review correct. And that's important. Thank you for correcting me. Thank you very much. We appreciate your work. Mr. Panth, you prefer a different name or something. What is it? Mr. Prosecutor, how about that? I go by Avi Panth, Your Honor. All right. Please, the court. Good morning, everyone. Avi Panth for the United States. I want to pick up just where my friend left off. You know, the government's view on the sport letter issue, that really the prejudice here attaches because there are threats to additional people imbued in this fourth letter. But that is what creates the context from our intrinsic argument. That's what creates the context for why. Because, again, the government has the burden to prove his mens rea. So you wanted the letters in for the very reason he complains about adding additional people and showing there were additional people, and not for a 404B reason, which seems to be pretty straightforward, indicating that at least maybe 404B2 would be satisfied here. Not necessarily that there were threats to these other people. Why do you want to add that? If it comes in under 404B, why do you need it to make a second argument? I don't understand. It seems to me, it jumps off the page that the 404B argument, from the government's standpoint, is the best argument. I understand, Your Honor. But you're entitled to take a different position. No, I mean, I think the 404B argument is, I mean, on reflection is probably the better argument. But, you know, I just wanted to. So it helps you when Judge King pointed that to you. It did, Your Honor. But it may well be that either argument is good or both are good. I mean, that's another thing. But our friend on the other side says both are flawed, fatally flawed. That's the point.  The question for us is whether both arguments are fatally flawed. Yes, Your Honor, and I don't think they are. My point was that what makes that relevant, Your Honor, is that it is the identification of those individuals that ties the threats to the Norfolk prosecution. The government's theory of the case is that he's threatening these people because they are involved in prosecuting him, in holding him accountable in the Norfolk case. And his men's rights. And that certainly is admissible or relevant to a sentencing proceeding. The question is whether it's relevant to the trial on these other issues. And, Your Honor, I think it is because... And the question is whether the government over-tried the case by adding that issue here when they didn't have to. I don't think so. And so I'll point, Your Honor, to United States v. White, which was a case... I mean, it looked like you could be saying you had an open and shut case anyway. And then you threw this issue in. Yeah, what's the... I mean, is there something you contend that fourth letter gave you that you didn't have from the three letters? Yes, Your Honor, and I think... What is it? I think the plus factor is the identification of... It resolves the question of why Mr. Beeman is threatening Special Agent Nicole Harris. You cannot garner that information just on the face of the count two letter to really understand why. And, again, we have the proof... And identity is in 404B, isn't it? Isn't that one of the terms in there? And I think that construct would help us on the 404B piece as well to prove motive as well as the subjective intent to threaten. I think under either construct, the government bears the burden to prove his mens rea. So your position is that... I mean, I guess I hear you. It goes to that. I mean, it would have been a pretty tough road to hoe to say, hey, I got three threatening letters to people involved in the prosecution, but it really had nothing to do with that. But I guess your point is you got a standard of proof that's beyond a reasonable doubt. You got evidence that shows it, and you're entitled to put it in. Yes, Your Honor, and this Court said in United States v. White, it says, and we appreciate that in many threats cases, the question of intent will be far from clear, even where it is undisputed that the defendant transmitted the communication and the message itself contains harsh and inflammatory language. We can only prove mens rea circumstantially. We can't unfold the thoughts of the defendant in front of the jury. And so we have to ask the jury to draw these inferences from circumstantial evidence that can help elucidate that he intended to threaten. The government has that burden, and I think that is important contextual information to be able to draw that out. And just to address Judge Wynn's point, the parties always treated this as an up or down proposition. I think, you know, had we been in a different posture where we said, hey, we don't need to talk about the threats as to all these other people but just the mere identification of those people, you know, that might have been something we considered. But that was never objected to in that way, and the court never had a chance to consider that. So for your case in chief, are you saying that the three letters would have not been sufficient evidence upon these charges? No, Your Honor. I mean, I think the three letters just would not fully explain his subjective intent. And maybe in hindsight, you know, they would. I think our evidence at trial came in. Did the defendant put on evidence? The defendant did not put on evidence. So there's no opportunity for you to rebut anything that they put in issue there? That's correct, Your Honor. That is correct. If you hadn't put that in and he had taken a stand, you could have cross-examined him on it. Absolutely, Your Honor. That fourth letter. But you had to make a decision as to whether to wait and see if he got on the witness stand. That's right. So you went ahead with it. Yes, Your Honor. If I may just address Brizuela briefly as well, I think one of the key distinctions that you pointed out, Judge Quattlebaum, was, I mean, here, the letter is addressed to the same person. This isn't like this opioid case that we're talking about. For unrelated patient testimony, that patient misconduct has not been charged. That was the case of Brizuela. Here you're talking about a letter to the same person, close in time to when that original letter was sent, and reiterating some of the same threats, but also providing all this other information that makes clear the source of his animus is due to her involvement. In other words, it's just within a connection in the Brizuela case with the evidence that was sought to be admitted with the actual charges, whereas here you're saying there is. Yes, Your Honor. And that would be a point of distinction between the two. And I'll say I think the Court recognized it is a fact-intensive decision. And, you know, I would submit for the Court that Judge Locke, you know, really had a pulse on this particular evidence. And it's reviewed for abuse of discretion. And it's reviewed for abuse of discretion. That's always the government's best argument. Yes, Your Honor. Or not always, but lots of times it is. And I appreciate sometimes being led to the water. You know, even when I'm led to the water, I don't always know to drink. So I appreciate that, Your Honor. Let me move on, if there are no more questions on this, to the anonymous jury procedures. I just want to clarify one thing, and that is the parties were in agreement as to all the jury procedures. The only thing that was in dispute was whether the jury would be instructed that, hey, jurors are referred to by numbers. It was the same non-prejudicial explanation that this Court adopted and ratified in United States v. Hager. And that was the only issue. I know anonymous jury procedures can relate to a wide range of practices. But actually here what it was was fairly narrow. And, again, there it was a fact-specific inquiry. I think, Your Honor. There's lots of procedures in jury selection that involve referring to jurors by numbers and things. I mean, that's maybe a different context than this, but it's nothing abnormal, is it, to consider jurors by numbers in certain parts of trial procedures? I think you're absolutely right. And jurors are coming into a stately courtroom. There's all sorts of procedure that they are being exposed to. There's no reason to think that they would come and look at the fact that they're referred to by number. Maybe that's just what happens in a courtroom. I mean, I think Judge Locke balanced the equities completely in line with United States v. Hager, and really the defendant was not prejudiced. Did the district court say the reason was to protect privacy or something like that? Yes, Your Honor. And that's part of the instruction to prevent nosy onlookers from taking on view. Was that right? Is that right? Was that the actual reason or was the reason safety for the jurors? I mean, does it matter if you, it seems odd to me, to say a reason that might not have been the reason. Or maybe that is. See what I'm getting at? I understand. So is it okay to mislead or misdirect the jury? Not mislead in any pejorative way, but I think you have to balance that against the overarching interest. It really was for their safety, wasn't it? Absolutely. Well, I think that's right, but it's about protecting the rights of the defendant. I mean, the alternative would be, I mean, I'm not sure how safe it is. I mean, the alternative is you don't say anything, you just do it. And you don't give an explanation that is, but that's, anyway, I just found that part interesting, that there was an explanation given that might not have been, you know, the actual reason. I understand, Your Honor. But there was no objection on that basis. There was no objection on that basis, and that's not really before the court. But the basis was really past attempts of Mr. Beaman to interfere with the judicial process. The fact that this entire Richmond prosecution in front of Judge Locke stemmed from his attempts to interfere with the judicial process. Was the trial in Richmond? Yes, Your Honor. The trial was before Judge Locke in Richmond. I know it was before Judge Locke. I thought maybe, I sort of assumed it was in Norfolk. It was a Norfolk indictment. Let me just clarify. So the predicate, there was a predicate case in Norfolk, and that case was before Judge Young. That was also a threats case. And in the midst of that threats case, that's when Special Agent Matthew Hagen, I'm sorry, AUSA Matthew Hagen's Special Agent Nicole Harris were prosecuting Mr. Beaman. That's when they started receiving letters. So Judge Locke found that that itself is an interference in the judicial process, and that factored into the decision. I think she was correct in making that decision. It falls under. Yeah, that's not challenged either. I've assumed that the trial was in Norfolk for some reason. But it was up here in the new courthouse. Yes, Your Honor. That is a fantasy. Yes, Your Honor. Let me just touch. Judge Locke's an experienced judge. We know that. She's been around and tried a lot of cases before she was a judge. Yes, Your Honor. Yes, Your Honor. She knows her way around the courtroom. Absolutely. Let me just touch briefly on the closing argument issue. So in closing argument, the government conceded that it articulated an incorrect standard for a true threat, implying that the true threat was a subjective standard to the listener rather than an objective reasonable person standard. Defense counsel, my friend to his credit, promptly objected. The court promptly gave a curative instruction and told the jury to disregard the incorrect standard. Juries presumed to follow instructions here. The government then corrected its prior misstatement going forward in articulating a correct standard for the rest of the closing. There's no dispute the jury instructions were proper in this case, and, in fact, my friend referred to those jury instructions at length in his closing that followed. So the improper statement was slight and isolated, seven lines in a 20-page transcript here, correct? You agree there was a bad argument. Without a doubt. It was an incorrect articulation of the standard. And the court fixed it almost immediately. The court fixed it immediately, and there's really no prejudice, I would suggest, to the defendant from that episode. Unless there are any other questions, Your Honor, I will take a seat. Thank you. Thank you. We appreciate you. Just briefly in response. Going in reverse, as far as the anonymous jurors, the test for whether to do that, that's set out in Mathis, Mr. Beamon doesn't check, well, he checks one or two of the boxes, but the balance favors him. First, he's not involved in organized crime, so there aren't people on the outside or associated with him that would take out some type of retaliation against the jurors. So there's not the capacity to do it. His past attempts to interfere with the judicial process were limited to making threats to the prosecutor, not to anyone, well, until the fourth letter associated with the prosecution. That's kind of important, isn't it? Pardon me? Kind of important. Well, it's important. It's the eighth actor, but. He's being tried by people, and then he turns around and makes threats against them. Right. What do you think he's going to do with the jurors? He's looking at a 10-year sentence. He's incarcerated. He doesn't have anyone on the outside to do anything about it. There's not any publicity on his case there. Did you represent him in that first case before Judge Young, or just in the case before Judge Locke? I was appointed as standby counsel. He decided he wanted to represent himself. Oh, he tried that case himself. Well, he pled and then wanted to withdraw his plea. The basis for that motion to withdraw was that his trial counsel there, he said, threatened him, ironically. And so he decided to represent himself, and I was standby counsel on that case. But there wasn't, on none of these cases, was there any publicity. And so that's also another factor in the Mathis problems. I think if you balance all that out, you're balancing one problem, which is the fact that he had made threats during the judicial process previously to people involved versus all the others, and I think the balance can easily fall in Mr. Beeman's favor. As far as the closing argument, to touch on that just briefly, the prosecutor, not Mr. Panth, but his co-counsel argued to the jury, how would you feel, essentially, to paraphrase, how would you feel if you received one of these threatening letters? And that's, of course, not the standard. They concede that the standard is an objective question of whether it's a true threat or not. But it's hard to unring that bell. But it may be, but that essentially, I mean, lots of times there's objections about things that are said in closing that shouldn't be. You may refer to something that you want in evidence, or you may do this or that. And we all, I mean, if the trial court's correction and instructions don't cure it, then we're almost saying there's no error that can't be fixed. I mean, is this, I get your argument that this is improper, but I've never seen, I don't think I've seen anything about this particular error that is, at least from a court's opinion standpoint, so different than other potential errors that it's beyond being fixable, which it sounds to me must be your argument. Yeah, I think I inadvertently provided you a good example today. I made a mistake. I misstated the standard for the standard review for the jury question. You corrected me. There is no question that you all will understand the difference. The jury, however, has been told that how would you personally feel? And now they're thinking, and there could be all the correction in the world. Now they're thinking, my God, how would I feel if I received one of these letters? I guess my question, I understand the argument there, but is there any authority from us, another circuit, state court, anywhere that says this type of error is so inflammatory, so beyond repair, that it automatically results in, I guess, a mistrial and can't be remedied by curative instruction? No, I don't have anything one way or the other on that. So I can't point to a specific case that I could hang my hat on, at least not that I found. You're running through that red light again. I am into that red light, so I will stop. Thank you very much. We understand your position. Thank you. And we appreciate your work. Thank you. We appreciate the prosecution's work.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.